UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:<br>AT&T ACCESS CHARGE LITIGATION | ) ) ) ) ) ) ) ) ) )  Civil Action No. 05-CV-05858 (MLC) |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL AT&T TO PRODUCE DISCOVERY

On Brief:

Matthew A. Peluso
Stryker, Tams & Dill, LLP
Two Penn Plaza East
Newark, NJ 07105
(973) 491-9500

Eric J. Branfman
Joshua M. Bobeck
Bingham McCutchen, LLP
3000 K Street, N.W., Suite 300
Washington, D.C.  20007
(202) 424-7500
Attorneys for Plaintiffs

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**I.   RELEVANT PROCEDURAL HISTORY AND EFFORTS TO RESOLVE THE DISPUTE WITHOUT THE COURT'S INTERVENTION** ....................................................... 1

**II.   ARGUMENT** ........................................................................................................................ 6

    **A.  Legal Standard** ............................................................................................................ 6

    **B.  Despite Its Representations to The Contrary AT&T Has Clearly Evidenced An Intent To Introduce Evidence That Puts Its Attorneys' Advice At Issue** .................. 7

**CONCLUSION** ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Federal Cases**

*In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) .................................... 10

*Laborers' Int'l Union of North America v. Foster Wheeler Corp.*, 26 F.3d 375 (3rd Cir. 1994).... 8

*Livingstone v. North Belle Vernon Borough*, 91 F.3d 515 (3rd Cir. 1996) ..................................... 7

*Pearson v. Miller*, 211 F.3d 57 (3rd Cir. 2000) .............................................................................. 6

*United States v. Bilzerian*, 926 F.2d 1285 (2nd Cir. 1991) ........................................................... 10

**FCC Decisions**

*In The Matter of AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 F.C.C.R. 4826 (Feb. 16, 2005). ......................................................... 3

*In the Matter of Petition for Declaratory Ruling That AT&T's Phone-to-Phone IP Telephony Services are Exempt From Access Charges*, 19 F.C.C.R. 7457 (April 21, 2004). ...................... 2

**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 6

Fed. R. Evid. 501 ........................................................................................................................... 6

Local Civil Rule 37.1(b)(2) ............................................................................................................ 3

**PRELIMINARY STATEMENT**

Plaintiffs submit this memorandum in support of their motion to compel AT&T to produce documents that it has withheld on attorney-client privilege grounds. The requested discovery relates to AT&T's Sixth Affirmative Defense, which alleges that Plaintiffs' retroactive recovery of past due access charges would be inequitable and unlawful. AT&T claims that such recovery would be inequitable and unlawful because AT&T's decision to avoid paying access charges on the traffic in question was reasonable in light of the FCC's past pronouncements. While Plaintiffs have sought discovery relating to whether AT&T had actually relied on those prior FCC pronouncements, AT&T has refused to produce numerous documents that go to this issue, asserting that they are protected from discovery by the attorney-client privilege and/or attorney work product protection. AT&T's litigation posture demonstrates that it has placed this advice at issue, and has therefore waived such privilege. AT&T should therefore be ordered to produce the documents.

### I. Relevant Procedural History And Efforts To Resolve The Dispute Without The Court's Intervention

A detailed description of the facts and background of this case is set forth in Plaintiffs' contemporaneously filed motion for partial summary judgment, and thus Plaintiffs will not burden the Court by repeating them here. For purposes of this motion, the pertinent facts are as follows. Plaintiffs are local exchange carriers operating throughout the United States, who have brought suit against AT&T for its failure to pay access charges for its use of Plaintiffs' access services to originate and terminate AT&T's long-distance traffic. AT&T first sought to justify its failure to pay the access charges in two separate petitions for declaratory rulings it filed with the FCC, one in 2002 and one in 2003.

The first petition involved AT&T long-distance traffic for which the company had

transmitted a portion of the calls in question over its Internet backbone. AT&T's rationale for not paying terminating access charges on this long-distance traffic was that although the calls were both started and completed over ordinary telephones and the traditional telephone network, some portion of these calls in the middle had been transmitted over AT&T's Internet backbone, rather than over the traditional copper telephone network, and therefore AT&T was entitled to an exemption from terminating (but not originating) access charges as an "enhanced service provider." AT&T claimed to have relied on prior FCC pronouncements in reaching this conclusion. The FCC rejected this argument, found that AT&T's service was no different than any other run-of-the-mill long-distance traffic, and held that the calls in question were subject to access charges. *In the Matter of Petition for Declaratory Ruling That AT&T's Phone-to-Phone IP Telephony Services are Exempt From Access Charges*, 19 F.C.C.R. 7457 (April 21, 2004).

AT&T's second petition involved its prepaid calling card traffic. AT&T classified calls made using its prepaid calling cards as interstate, even though the caller and the called party were located in the same state. It did this to avoid paying the higher intrastate access charges on these calls, instead paying the lower interstate rate. Its justification was that because the AT&T "platform" that the caller first reached in the course of completing a call was located in a different state than the caller, the call was interstate in nature. AT&T also argued that its subjecting callers to brief advertising messages during these calls made the service an "information service," and therefore jurisdictionally interstate. Once again, AT&T justified its position as having been based on prior statements made by the FCC. The FCC rejected AT&T's arguments and found that under its traditional-end-to end analysis such calls are intrastate, and that including advertising did not convert the calls into "information services" under its rules. *In The Matter of AT&T Corp. Petition for Declaratory Ruling Regarding Enhanced Prepaid*

2

*Calling Card Services*, 20 F.C.C.R. 4826 (Feb. 16, 2005).[1]

Following the FCC's definitive rulings that the traffic in question was all subject to access charges, Plaintiffs brought the present suits to recover the access charges AT&T had failed to pay.  In response to Plaintiffs' Complaints, AT&T interposed its Sixth Affirmative Defense in which it stated "Plaintiffs' request for retroactive damages is barred because retroactive recovery would be inequitable and unlawful."  Plaintiffs propounded an interrogatory in which it asked AT&T to explain the basis for this and other affirmative defenses.  AT&T in response referred Plaintiffs to its filings before the FCC in the proceedings relating to its petitions for declaratory rulings.  *See* AT&T Response to Plaintiffs' Interrogatory No. 16 (attached hereto as Exhibit A).  As discussed below, in those filings, in addition to arguing that its traffic was exempt from access charges under past FCC pronouncements, AT&T repeatedly represented that it had actually relied on those past FCC statements to its detriment in reaching the decision not to pay access charges on the traffic in question.

When it produced documents responsive to Plaintiffs' document requests[2], AT&T also provided Plaintiffs with privilege logs reflecting its intention to withhold thousands of pages of documents reflecting communications and/or analyses from its attorneys discussing the legal issues and legality of its access avoidance schemes.  In a May 4, 2006 letter, Plaintiffs' counsel took exception to AT&T's refusal to produce the documents, noting that AT&T's position before the FCC, which it had expressed an intention to reassert here, necessarily put communications

---

[1] AT&T appealed the FCC's ruling on prepaid calling card traffic to the Court of Appeals for the District of Columbia Circuit; that appeal is still pending.

[2] As was discussed at the case management conference, the disagreement between the parties does not focus on any specific document requests, but rather is an overarching issue.  As such, Plaintiffs have not attached any specific portion of its document requests or AT&T's responses, as per Local Civil Rule 37.1(b)(2).

3

with counsel at issue.  5/4/06 letter from Eric Branfman to Brian A. McAleenan (attached hereto as Exhibit B).

In response to Plaintiffs' letter, AT&T advised that its Sixth Affirmative defense is not an "advice of counsel" defense, and "AT&T intends to show in support of its Sixth Affirmative defenses that its position regarding the non-applicability of terminating access charges was **objectively** reasonable." 5/18/06 letter from David Schiffman to Eric Branfman (attached hereto as Exhibit C) (emphasis added)**.**  AT&T therefore contended that it had not put its advice of counsel at issue.  *Id*.  Plaintiffs brought this issue to the Court's attention in a letter sent in advance of the May 31, 2006 conference.  *See* 5/26/06 letter from Matthew Peluso to the Honorable John J. Hughes (attached hereto as Exhibit D).  In that letter, Plaintiffs explained that in order to overcome the presumption of retroactivity afforded an agency decision, AT&T would need to demonstrate its actual reliance on past FCC decisions, and that objective reasonableness was not the standard.  In response AT&T once again stated that it only intended to show that its position was objectively reasonable and would not prove its defense through reliance on advice of counsel.  *See* 5/30/06 letter from Richard Brown to the Honorable John J. Hughes (attached hereto as Exhibit E).

This issue came before the Court during the May 31st conference.  During that conference, counsel for AT&T represented that the company would not attempt to establish actual reliance on the FCC's prior pronouncements, but instead would only attempt to show that its position was objectively reasonable, in the following exchange:

> THE COURT:  And what do you say about that, Mr. Schiffman?  Just by way of educating me in advance of the formal motion practice.
>
> MR. SCHIFFMAN:  Well, there's the substantive issue of what it is we have to prove.  We believe -- but all we're going to allege is objective reliance.  And if that's not good enough, somebody is going to decide that down the road.  I don't think that a Discovery Motion or a motion about privilege is the place to decide

4

> what the substantive elements of the Cause of Action are.  Because we're not alleging subjective reliance as a basis.  And we're -- and if the only issue is objective reliance -- if that's the only thing that we are putting into issue, that is not an advice of Counsel defense and it does not waive the privilege.
>
> THE COURT:  Okay.  Well, #1, you would offer a certification to that effect that you will not be arguing subjective or actual reliance, correct?  So this doesn't come back to haunt us later on.
>
> MR. SCHIFFMAN:  Yes.

Transcript of May 31, 2006 Case Management Conference (pp. 22-23) (relevant excerpts attached hereto as Exhibit F).

Based on AT&T's offer to provide a written certification of its position, Plaintiffs' counsel requested leave to file a motion for summary judgment—which the Court granted.  On June 9, 2006 AT&T's counsel sent its "certification."  6/9/06 letter from David Schiffman to Eric Branfman ("Schiffman Certification Letter").  (Attached hereto as Exhibit G).  While that letter purported to put in writing AT&T's certification that it would only attempt to show "objective reasonableness" and would not rely on its advice of counsel or otherwise attempt to show AT&T's subjective beliefs about the FCC's previous statements, it included the following broad disclaimer in the final paragraph of the letter:

> This letter is not intended to catalogue all the evidence that AT&T intends to offer in support of the Sixth Affirmative Defense.  AT&T intends to present other **objective evidence**, such as the investment it made in its phone-to-phone IP telephony service and the fact that its investment would not have been justified without access cost savings.

*Id.*

Through this disclaimer, AT&T has expressed its intention to prove that its position was **objectively** reasonable by offering into evidence its **subjective** reliance on FCC pronouncements in making investment decisions regarding its phone-to-phone IP telephony service.  By offering evidence as to "the fact that its investment would not have been justified without access cost savings," AT&T proposes to show the factors that actually went into its decision-making

5

process. "Justifying" an investment, which AT&T proposes to show, is inherently a subjective business decision that requires a weighing of numerous factors. Yet according to AT&T, the law must have been what AT&T objectively believed it to be, otherwise AT&T would not have made the investment decisions it did. Not only is this logic backwards, it necessarily opens the door to the advice that went into making those investment decisions, which given the significant regulatory issue involved here (as well as the identification of multiple communications as to this subject in AT&T's privilege logs), must have included the advice of counsel.

## LEGAL ARGUMENT

### A.     Legal Standard

The general guidelines for determining the permissible scope of discovery for federal court cases are set forth in Federal Rule of Civil Procedure 26, which provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). When a party asserts an evidentiary privilege, such a claim in the first instance is governed by Federal Rule of Evidence 501, which states that the privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. Under this rule, federal courts are to apply the federal common law of privilege to "all elements of claims except those 'as to which State law supplies the rule of decision.'" *See Pearson v. Miller*, 211 F.3d 57, 66 (3rd Cir. 2000) (quoting Fed. R. Evid. 501). When a case involves both federal and state claims, the Third Circuit "has resolved this potential conflict in favor of federal privilege law." *Id*. (reaffirming the principle that "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege is the controlling rule") (*quoting William T. Thompson Co. v.*

*General Nutrition Corp.*, 671 F.2d 100, 104 (3rd Cir. 1982)).

In this Circuit: "[t]he attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer **or that the advice was otherwise relevant to the legal significance of the client's conduct**." *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3rd Cir. 1996) (emphasis added). "A party who asserts a claim that 'in fairness requires examination of protected communications' thereby waives the attorney-client privilege as to those communications." *Id. (quoting United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir. 1991)).

### B.  Despite Its Representations to The Contrary AT&T Has Clearly Evidenced An Intent To Introduce Evidence That Puts Its Attorneys' Advice At Issue

Before the FCC, AT&T consistently represented that it had **actually** relied on the FCC's pronouncements to its detriment, and took umbrage when other parties suggested that there was no evidence that it had actually so relied. *See e.g. In the Matter of AT&T's Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges, et. al.*, AT&T Ex Parte, March 5, 2004 (WCB No. 02-361) at 19 ("AT&T March 5th Ex Parte") ("Nor is there any merit to the suggestion that AT&T and other providers did not *actually* rely on the Commissions' statements when they offered VOIP services and concluded that they were not required to pay terminating access charges for such traffic. AT&T and other providers have affirmatively represented to the Commission that they did in fact rely on their understanding of the Commission's statements") (emphasis in original) (relevant excerpt attached hereto as Exhibit H).

When asked in discovery in this case to explain the basis for its Affirmative Defense that the retroactive imposition of access charges would be inequitable, AT&T specifically referred Plaintiffs to its FCC filings. In those filings AT&T represented that it had **actually** interpreted

7

prior FCC statements to mean that it was not legally obligated to pay access charges on the traffic at issue.  Because it had reached such legal interpretations in reliance on the FCC's statements, AT&T argued that it would be unfair to impose retroactive access charges on it.  *See e.g.*, AT&T March 5th Ex Parte at 19.

Based on these representations, Plaintiffs understandably seek discovery as to the interpretations which formed the basis of AT&T's purported reliance.  Plaintiffs have pointed out to AT&T that in order to show that the FCC's decision should not be applied retroactively, it will have to prove (not merely allege) that it did in fact actually rely on such pronouncements to overcome the presumption of retroactivity that is accorded an agency decision.  *See Laborers' Int'l Union of North America v. Foster Wheeler Corp.*, 26 F.3d 375, 393 (3rd Cir. 1994).  Such proof will inevitably consist, in large part, of demonstrating what AT&T's understanding was of the Commission's statements. This is because AT&T cannot credibly assert that it formulated positions of such significant legal magnitude without having relied on the advice of counsel, which would necessarily have informed the subjective business decisions of the relevant AT&T employees.

Despite its position before the FCC, as incorporated in its interrogatory answers, AT&T has suddenly claimed that it has no intention of proving actual reliance, only that such a position was objectively reasonable, *i.e.* AT&T *could have* reasonably relied on the FCC's decisions. Plaintiffs were all too glad to accept AT&T's certification that it would offer no evidence of actual reliance, but only seek to prove objective reliance, as this made the case ripe for summary judgment on liability, and eliminated the need for discovery into the privileged communications. Yet, when Plaintiffs received AT&T's so called "certification letter" it was clear that AT&T planned to use its attorney-client privilege as both a sword and a shield.

8

The syllogism in AT&T's "certification letter," can best be described as follows. AT&T only plans to show that its interpretations regarding the legality of its access avoidance programs were objectively reasonable in light of past FCC statements. AT&T will show this objective reasonableness by putting in evidence that it made substantial investments in its network and "the fact that its investment would not have been justified without access cost savings." These investments of course are proof that its position was objectively reasonable, because otherwise AT&T would not have made such investments.

AT&T's position evinces an intent by the company to offer record evidence of actual reliance through the back door. AT&T offers no explanation as to how its *subjective* decision to invest money in its network based on its flawed legal interpretation of federal regulations constitutes *objective* evidence of the reasonableness of its position. Its strategy is no more acceptable than if a criminal defendant certified to the Court that he intended to invoke his Constitutional privilege against self-incrimination by not taking the stand in his own defense, then had his attorney read during closing arguments a statement from him proclaiming his innocence because he acted in self-defense. If AT&T wants to offer into evidence the fact that it made investments in its infrastructure *based on its interpretation of the legality of its programs under federal law*, to show the reasonableness of its position, it has opened the door as to all the advice that went into formulating those investment decisions. AT&T cannot just put into evidence its ultimate conclusion that it would be prudent to invest money in its network as evidence of its actual reliance; it must show the underlying information as well. For example, if AT&T's attorneys advised their clients that the law was unclear, and that they had a 50-50 chance of prevailing, that would be highly relevant to the question of whether AT&T's business people on the one hand "actually relied" on the FCC's past decisions or, on the other hand,

9

decided to assume as a businessman's risk the unfavorable FCC decision that they eventually received.  *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir. 1991) (raising defense that defendant thought his actions complied with securities laws "would have put his knowledge of the law and the basis for his understanding of what the law required in issue.  His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent") (*cited with approval in Livingstone v. North Belle Vernon* Borough, 91 F.3d 515, 537 (3rd Cir. 1996)); *see also In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) (finding that waiver doctrine applied to advice given by in-house counsel as well).

## CONCLUSION

AT&T's "certification letter" shows its intent to demonstrate that its position regarding the non-payment of access charges was reasonable based on its subjective legal interpretations of prior FCC statements and its reliance on those interpretations in making investment decisions, despite its representations to the Court that it would not attempt to show any actual or subjective reliance on those orders.  If AT&T intends to pursue this course it has necessarily put at issue its understanding of the law, and the basis for that understanding, and as such under the Third Circuit's standards has waived any privilege as to the advice that formed the basis for that understanding.

Respectfully submitted,

Dated:  June 23, 2006

/s/ Matthew A. Peluso
Matthew A. Peluso, Esq.
Stryker, Tams & Dill LLP
Two Penn Plaza East
Newark, NJ 07105
(973) 491-9500

Eric J. Branfman
Joshua M. Bobeck
Bingham McCutchen, LLP
3000 K Street, N.W., Suite 300
Washington, D.C.  20007
Tel.: (202) 424-7500
Attorneys for Plaintiffs