UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE AT&T ACCESS CHARGE LITIGATION | : : : : : | Civil Action No.: 05-5858(MLC)<br><br>MEMORANDUM<br>OPINION |

**HUGHES, U.S.M.J.**

This matter having come before the Court upon Motion by Plaintiffs to Compel Defendant AT&T ("Defendant") to Produce Discovery, [Docket entry #124], returnable July 17, 2006. Defendant submitted opposition and the Court conducted Oral Argument on August 15, 2006. Plaintiffs claim that Defendant may not assert attorney-client privilege in opposition to Plaintiffs' discovery requests relating to Defendant's decision not to pay access charges because Defendant's "litigation posture demonstrates that it has placed this [legal] advice at issue, and has therefore waived such privilege." (Pls.' Br. at 1). Defendant claims that it has not, and will not, use an "advice of counsel" defense and, therefore, no waiver of the attorney-client privilege has occurred. (Def.'s Br. at 3). For the reasons stated below, Plaintiffs' Motion to Compel Discovery is denied.

**I.    BACKGROUND**

Plaintiffs are local exchange carriers operating throughout the United States, who have brought suit against Defendant for its failure to pay access charges for using Plaintiffs' access services to originate and terminate Defendant's long-distance traffic. The dispute arises out of the parties' differing views on what constitutes traditional voice services as opposed to information services. The Federal Communications Commission ("FCC") has long distinguished between providers of traditional voice services over the interstate telecommunications network

and providers of information services, including Internet Service Providers ("ISPs"). ISPs are permitted to "'pay business line rates and the appropriate subscriber line charge, rather than interstate access rates, even for calls that appear to traverse state boundaries.'" *Access Charge Reform,* 12 FCC Rcd. 15982, ¶ 342 (1997). Voice communications can also be transmitted over the Internet, and are known as voice over IP ("VOIP").

In addressing the issue of regulation of VOIP, the FCC distinguished between computer-to-computer IP telephony services and phone-to-phone IP telephony services. *Report to Congress, Federal-State Joint Board on Universal Service*, 13 FCC Rcd. 11, 501, ¶¶ 83-92 (1998)("*Universal Service Report*"). The Universal Service Report did not make any "definitive pronouncements" about how either type of VOIP should be regulated in the future. The Report went on to say that if it should find that such phone-to-phone IP telephony services were telecommunications services, "we may find it reasonable that they pay similar access charges" for the termination of their calls, but that "we likely will face difficult and contested issues relating to the assessment of access charges on these providers." *Id.* at ¶ 91.

Under this guidance, Defendant undertook to develop new technologies that used IP technology to provide high quality voice services over Defendant's Internet backbone. This program lasted from late 2000 until mid 2004, during which time Defendant used the new technology to provide a phone-to-phone IP telephony service for the termination of calls in selected geographical areas of 14 states. (Def.'s Br. at 6). Local carriers, including Plaintiffs in the above captioned case, objected to Defendant's use of this service without paying access charges to the local carriers. Defendant argued that not paying access charges on this long-distance traffic was permitted because the calls at some point had been transmitted over

Defendant's Internet backbone, rather than over traditional telephone networks. As a result, Defendant filed a petition with the FCC in October 2002 for a declaratory ruling that Defendant's phone-to-phone IP telephony services were exempt from interstate access charges.

In its petition, and subsequent submissions to the FCC, Defendant argued that its phone-to-phone IP telephony service was not subject to interstate access charged under the FCC's prior decisions. In addition, Defendant claimed that the FCC should continue to exempt such services from payment of access charges in order to encourage the development of new IP-based services. Defendant also addressed the issue of "whether any FCC decision on this issue adverse to [Defendant] could lawfully and appropriately be applied on a retroactive basis." *Id.* at 6.

In April 2004, the FCC determined that Defendant's IP telephony service would be subject to interstate access charges. However, the FCC's ruling was limited to a determination on a *prospective basis*. *Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services are Exempt from Access Charges*, 19 FCC Rcd. 7457 (2004)(emphasis added). The FCC did not determine whether the ruling "necessarily has a retroactive effect." *Id.* at ¶ 21. It expressly declined to apply its ruling retroactively, stating that the courts should address "the equities of permitting retroactive liability" on a "case-by-case basis." *Id.* at ¶ 23.

Defendant then filed a second petition with the FCC seeking declaratory judgment regarding its prepaid calling card traffic. Defendant argued that it should not have been required to pay intrastate access charges on certain calls where a call reached Defendant platform in another state, despite the fact that the caller and recipient were in the same state. Defendant argued that it took this position based on prior statements from the FCC. Again, the FCC found that under its traditional end-to-end analysis such calls are intrastate. *In The Matter of AT&T*

*Corp. Petition of Declaratory Ruling Regarding Enhanced Prepaid Calling Card Services*, 20 F.C.C.R. 4826 (Feb. 16, 2005).

Following the FCC's declaratory ruling, Defendant ceased providing its phone-to-phone IP telephony service. Plaintiffs brought this lawsuit against Defendant contending that they are entitled to the payment of access charges for past periods. In its Answer to Plaintiffs' Complaints, Defendant asserted as its Sixth Affirmative Defense that "Plaintiffs' request for retroactive recovery would be inequitable and unlawful." Defendants also stated "[i]n incurring the costs to develop and deploy its phone-to-phone IP telephony service, [Defendant] detrimentally relied on its understanding that the service would not be subject to access charges," in its initial Rule 56 Statement.

In response to Plaintiffs' discovery requests, Defendant produced documents and also produced a privilege log, in which it identified thousands of pages of documents it intended to withhold based on attorney-client privilege. In a May 4, 2006 letter, Plaintiffs' counsel took exception to Defendant's claim of privilege, arguing that Defendant had put advice of counsel at issue, by claiming that it detrimentally relied on prior FCC rulings, and thereby waived the privilege. Further, Plaintiffs contend that Defendant's Sixth Affirmative Defense and its Rule 56 statement constitutes a waiver of Defendant's attorney-client privilege. Defendant states that the Sixth Affirmative Defense is not an "advice of counsel" defense and that Defendant "intended to show in support of its Sixth Affirmative defense that its position regarding the non-applicability of terminating access charges was objectively reasonable." (Schiffman Ltr. 05/18/06). Thus, Defendant stated that it did not put its advice of counsel at issue, did not waive the attorney-client privilege and thus, does not have to produce the privileged documents for Plaintiffs' review.

4

Plaintiffs filed the present motion to request the Court require Defendant to produce the documents, finding that Defendant waived the attorney-client privilege by putting advice of counsel at issue in the case.

## II.     DISCUSSION

Plaintiffs argue that Defendant is required to produce otherwise privileged documents because Defendant chose to put advice of counsel at issue in the above captioned case, thereby waiving the privilege. (Pls.' Br. at 7). Defendant claims that its Sixth Affirmative defense is not an "advice of counsel" defense and therefore, it did not waive the privilege. (Def.'s Br. at 3). The Court finds that Defendant did not put advice of counsel at issue, and thus it is not unfair to Plaintiffs to maintain Defendant's claim of attorney-client privilege.

In general, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." FED. R. CIV. P. 26(b)(1). However, a party may withhold relevant information, if it asserts a valid privilege. Such claim of evidentiary privilege is governed by common law. FED. R. EVID. 501. When a case involves both state and federal claims, federal privilege law applies. *See Pearson v. Miller*, 211 F.3d 57, 66 (3rd Cir. 2000). The privilege is not absolute. In this Circuit, "[t]he attorney-client privilege is waived for any relevant communication if the client asserts as a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct." *Livingstone v. North Belle Vernon Borough,* 91 F.3d 515, 537 (3rd Cir. 1996). "Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege. That is, in leaving to the client the decision whether or not to waive the privilege by putting the

5

attorney's advise in issue, . . . the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege. . . ." *Rhone-Poulenc Rorer Inc. v. Aetna Casualty & Surety Insurance,* 32 Fd 3d 851, 863 (3rd Cir. 1994). "A party who asserts a claim that 'in fairness requires examination of protected communications thereby waives the attorney-client privilege as to those communications.'" *Id.* (*quoting United States v. Bilzerian,* 926 F.2d 1285, 1292 (2nd Cir. 1991)). Therefore, not only must a party put its attorneys advice at issue, it must be unfair to the opposing party not to disclose the attorney-client communications.

In the present case, Defendant has stated that it does not intend to rely on an advice-of-counsel defense in defending its decision not to pay access charges to local carriers. In its Answer to the Plaintiffs' Complaint seeking payment of the withheld access charges, Defendant stated that "Plaintiffs' request for retroactive damages is barred because such retroactive recovery would be inequitable and unlawful." (Def.'s Sixth Aff. Def.). In addition, Defendant's Rule 56 statement states that "[i]n incurring the costs to develop and deploy its phone-to-phone IP Telephony service, AT&T detrimentally relied on its understanding that the service would not be subject to access charges." (Rule 56 at 40). Plaintiffs claim that these statements confirm that Defendant is relying on an "advice-of-counsel" counsel defense and therefore any conversations or documents which discuss Defendant's decision to withhold payment of access charges is relevant, at issue, and is not subject to a claim of attorney-client privilege.

Plaintiffs point to *United States v. Bilzerian*, 926 F.2d 1285 (2nd Cir. 1991), to support their claim that Defendant put its counsel's advice at issue, and therefore, waived the attorney-client privilege. (Pls.' Br. at 10). In *Bilzerian*, a criminal case, the Court found that by raising a

Case 3:05-cv-05858-MLC-JJH   Document 138   Filed 09/08/06   Page 7 of 10 PageID: 3216

defense that defendant thought his actions complied with securities law, *Bilzerian* "put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.* at 1292. The Court also noted that "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purpose." *Id.* (*See In re von Bulow*, 828 F.2d 94, 101-02 (2nd Cir. 1987)). In addition, the Court found that "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications. *Id.* (*See United States v. Exxon Corp*., 94 F.R.D. 246, 249 (D.D.C. 1981) (claims of good faith reliance on governmental representations waived attorney-client privilege); (*See also, Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975)(assertion of qualified immunity defense waived attorney-client privilege)).

The Third Circuit again addressed the waiver of privilege when a defendant puts an attorney's advice in issue. In *Livingstone v North Belle Vernon Borough*, 91 F. 3d 515 (3rd Cir. 1996), the Court found that when the Plaintiff asserted that "she did not appreciate the release-dismissal agreement's legal implications [it was] tantamount to a claim that her attorney did not giver her accurate legal advice." *Id.* at 536. The Court noted it would be unfair to allow the Plaintiff to deny responsibility based on the lack of accurate advice provided by her counsel, without disclosing the communications between her and counsel to determine the accuracy of such claim. *Id.* Again, the Court focused on whether prohibiting disclosure of the privileged information would be unfair to the opposing party.

As mentioned, Plaintiffs argue that Defendant's Sixth Affirmative Defense and its Rule

56 statement should be interpreted to find that Defendant is alleging that it relied on advice of counsel and therefore the Court should find a waiver of privilege as it did in *Bilzerian* and *Livingstone*.

The Court disagrees. In *Bilzerian,* the defendant relied on counsel's advice to interpret complex securities law before taking action based on that advice. The defendant then used that advice as a shield to protect him from criminal liability. Once *Bilzerian* decided to use reliance on attorney's advice as a defense, he put that advice at issue in the case. The Court found that to do so, but to not provide that advice/communications to the opposing party, would be unfair. Thus, the privilege must be waived. In *Livingstone*, the party, this time the Plaintiff, stated that she did not appreciate the legal consequences of her actions and therefore should not be liable for those actions. The Court again found, that by making such statement, the Plaintiff put the advice of counsel at issue, and thus fairness dictated that communications between the Plaintiff and her counsel be disclosed to the Defendant.

In the present case, Defendant claims that it relied on prior FCC decisions, to make a business decision to withhold payment of access charges to Plaintiffs and that such reliance was objectively reasonable given the plain language of the FCC rulings. Defendant is not claiming that it detrimentally relied on advice of counsel in making the decision to withhold such charges. Defendant's Sixth Affirmative Defense states that "Plaintiffs' request for retroactive recovery would be inequitable and unlawful."  This merely states that awarding Plaintiffs retroactive damages would be unfair to Defendant, but does not, in the Court's view,  implicate advice of counsel.  Defendant's Rule 56 statement similarly fails to implicate advice of counsel. It states "[i]n incurring the costs to develop and deploy its phone-to-phone IP telephony service, AT&T

detrimentally relied on its understanding that the service would not be subject to access charges." Plaintiffs argue that any jury would necessarily conclude that Defendant would not spend millions of dollars without first getting some legal advice.  Thus, Plaintiffs argue, Defendant has at least implicitly placed advice of counsel in issue.  Defendant does not state that it detrimentally relied on counsel's advice when it decided to invest money to develop VOIP technology.  Rather, Defendant will provide objective evidence to support its claim of detrimental reliance on the FCC rulings.  Such evidence will likely include the $30 million it allocated for development of VOIP technology and the industry standards for dealing with access charges in similar situation.  Suggesting that this implicitly places advice of counsel at issue is mere speculation on Plaintiffs' part.  Plaintiffs' speculation comes on the heals of Defendant's express assertion that it will not rely on such advice.  Therefore, unlike the parties in *Bilzerian* and *Livingstone,* neither the Sixth Affirmative Defense or the Rule 56 statement, demonstrate that Defendant put forth an advise-of-counsel defense to shield it from liability.

   Thus, the Court finds that neither Defendant's Sixth Affirmative Defense, nor its Rule 56 statement demonstrate that Defendant is putting forth an advice-of-counsel defense.  Because Defendant is not using this defense as a shield, the Court finds it would not be unfair to Plaintiffs to maintain Defendant's assertions of attorney-client privilege on documents and advice of counsel related to this issue.  Therefore, the Court finds that Defendant did not waive its attorney-client privilege.

### III. CONCLUSION

   The Court finds that Defendant has not put its advice of counsel at issue in the present case.  The Court also finds that Defendant intends to provide objective evidence to support its

9

claim that retroactive damages would be inequitable and unlawful given the FCC rules and regulations.  Thus, the Court also finds that it would not be unfair to Plaintiffs to maintain Defendant's claim of privilege on communications that will not be used to shield Defendant from liability.  Therefore, the Court concludes that Defendant did not waive its attorney-client privilege and Plaintiffs' Motion to Compel release of such privileged documents is denied.  An appropriate order accompanies this Memorandum Opinion.

        /s/*John J. Hughes*
        **JOHN J. HUGHES**
        **UNITED STATES MAGISTRATE JUDGE**

**Dated: September 7, 2006**